John C. Wheeler,
Off. Ref. In this action plaintiff seeks to recover from the defendants Feldman and De Maria, as copartners doing business as the “ Youngstown Aluminum Products Co.”, the value of certain merchandise consisting of aluminum windows, doors and awnings, sold by plaintiff to the defendants.
Plaintiff’s first cause of action is based on the alleged fraud of the defendant De Maria in making false financial statements concerning both his own and the copartnership’s financial responsibility. The second cause of action is to recover the reasonable value and agreed price of the merchandise sold and delivered to defendants during the time the partnership was in existence.
Prior to April 1, 1955 the defendant Feldman, doing business under the same assumed name as above, purchased from plaintiff its products on a C. O. D. basis. Early in the month of April arrangements were made whereby De Maria was to become a partner of Feldman. The matter of credit to the new partnership was discussed with Mr. Malkoff, plaintiff’s representative, and defendants were informed that credit would be extended, depending upon De Maria’s financial record. The copartnership was formed on April 14, 1955 and continued until July 15th (as contended by defendants) or August 10, 1955 (as claimed by plaintiff).
Although there was some verbal discussion in April regarding De Maria’s finances, it was vague and inconclusive. No written financial statement was made by De Maria until May 20, 1955. In this statement De Maria listed his total assets as $185,487, and his net worth as $146,371.87, but omitted to disclose that he was only one-half owner of the listed real estate and equipment which he valued at $107,000, this particular property being owned jointly by himself and wife. To this extent the financial statement was false.
However, the proof clearly indicates the absence of one of the essential elements of fraud, i.e., that plaintiff relied upon the false statements to its injury. An action for fraud is not maintainable without proof of reliance on the fraudulent statements. (Ochs v. Woods, 221 N. Y. 335; Sager v. Friedman, 270 N. Y. 472.)
It appears that from the middle of April to May 20th plaintiff extended credit to the defendants on an open account to *795 the extent of about $15,000, and this occurred before plaintiff had received or learned the contents of the alleged false financial statement. In fact, plaintiff’s own testimony is to the effect that it did not rely on any financial statement, either oral or written. It follows that the cause of action in fraud should be dismissed.
In the second cause of action there is a sharp question of fact as to the date when plaintiff was given notice of the partnership dissolution. Admittedly, no written notice was filed or given to plaintiff or any other creditor. The defendant De Maria testified that he had a telephone conversation with plaintiff’s representative, Malkoff, “A day or two before my partnership broke up” and said to Malkoff, “‘Sam, I said, Mike and I are busting up on the third’.” He then testified that the partnership was dissolved on July 15, 1955. If, as defendant stated, this telephone call was made on July 13th or 14th, then his statement that they were ‘ ‘ busting up on the third ” must necessarily refer to the third day of some future month. The other partner, Feldman, gave testimony tending to corroborate that given by De Maria. He stated that he was present and participated in that telephone conversation, which he testified took place “ just a couple of days before the agreement was drawn up.” The only agreement referred to in the testimony is the collateral assignment of the accounts receivable made between plaintiff and the defendant Feldman, doing business as “ Youngstown Aluminum Products Co.”, dated August 17,1955. This testimony tends to support that given by Malkoff to the effect that he did not learn of the proposed dissolution until about the 10th of August, 1955, at which time he was informed that the firm was in the process of breaking up. Malkoff denies that he had any such conversation in the month of July, as testified to by both Feldman and De Maria.
Moreover, plaintiff’s ledger sheets indicate that credit was extended to this copartnership from July 15th to August 17th to the amount of some $9,000, and that the balance due on August 17th, when the last shipment on credit was made, was $27,931.18. After that date all sales were made on a C. O. D. basis or its equivalent.
It strikes me as incredible that plaintiff would have continued to extend credit in such large amounts after July 15th had it received any notice to the effect that De Maria, on whose financial responsibility plaintiff relied, was retiring from the partnership. I, therefore, find that plaintiff received no notice of De Maria’s withdrawal from the partnership until about August 10, 1955.
*796 Furthermore, it is well settled that a partnership continues, notwithstanding a formal dissolution, as to a third person acting in good faith who has had no actual or constructive notice that the firm has been dissolved. And as to the plaintiff or others who have had actual dealings with such a firm, actual notice of the dissolution must be given. (Partnership Law, § 66.) In the absence of actual notice of the withdrawal of the defendant De Maria, he continued liable for all obligations owing to the plaintiff occurring after as well as before the dissolution. (Stikeman v. Whitman, Requardt & Smith, 272 App. Div. 627; Drake v. Hodgson, 207 App. Div. 783, 786.)
After giving proper credits, I find that the balance due plaintiff from the defendants as of August 10, 1955 is $17,221.78.
The defendant De Maria seeks to avoid liability on the ground that, after the dissolution and notice thereof to plaintiff, he (De Maria) stood as surety only for payment of the account; ■that plaintiff knew of the dissolution and that Feldman had taken over the business and assumed the partnership obligations ; that thereafter plaintiff, by taking the assignment of the accounts receivable from Feldman, extended the time of payment of the indebtedness, thereby releasing De Maria from liability therefor.
The applicable law is set forth in the Partnership Law in section 67. It is there provided in part:
“ 1. The dissolution of the partnership does not of itself discharge the existing liability of any partner. 2. * * *. 3. Where a person agrees to assume the existing obligations of a dissolved partnership, the partners whose obligations have been assumed shall be discharged from any liability to any creditor of the partnership who, knowing of the agreement, consents to a material alteration in the nature or time of payment of such obligations.”
The above-quoted subdivision 3 is relied upon by the defendant De Maria to support his contention.
In my opinion, the evidence does not support that contention. There is no evidence whatsoever that Feldman assumed the existing obligations of the partnership. In fact, the record is entirely silent as to what arrangements, if any, were made between the partners at the time of the dissolution. De Maria’s argument is, in substance, that plaintiff knew of an agreement which actually did not exist.
I, therefore, find that there was no agreement by which Feldman was to assume the existing partnership obligations, and it follows, of course, that plaintiff could have had no knowledge of any such nonexistent agreement.
*797 The factual situation is substantially different from that in Filippini v. Stead (4 Misc. 405), cited by the defendant. In that case the defendant proved the dissolution; that all accounts between the partners were settled; that the retiring partner paid the firm a substantial amount of money on his retirement, and that the remaining partner agreed to assume the obligations of the firm. It was held that, although the written notice to the plaintiff creditor failed to state that the remaining partner had assumed the liabilities, it was sufficient to put him upon ■his inquiry and charge him with the knowledge such inquiries would have revealed. In the instant case, any inquiries made by plaintiff would not have revealed that Feldman had assumed the partnership liabilities. Moreover, in the cited case a new arrangement was made in writing some two years after the dissolution, which indicated that the creditor knew of the new relation and voluntarily consented to it.
Nor do I find any evidence that plaintiff consented to any material alteration in the nature or time of payment of the firm’s obligations.
The assignment of the accounts receivable was made only a few days after plaintiff learned of De Maria’s retirement. It appears to me to be only an attempt to secure additional collateral for the indebtedness and does not affect the nature or time of payment thereof. Upon the dissolution, the partnership did not terminate but continued until the winding np of its affairs. (Partnership Law, § 61.) Either of the partners had the right to participate in the winding up process (id., § 68) and to have the partnership property, including the accounts receivable, applied to discharge of its liabilities (id., § 69, subd. 1).
There is nothing in the evidence indicating* why plaintiff should have been willing to release the defendant De Maria and accept Feldman alone as its debtor; in fact, the contrary intention clearly appears.
I, therefore, find that plaintiff is entitled to a judgment ag*ainst the defendants on the second cause of action in the amount of $17,221.78, with interest from August 10, 1955, together with costs. The defendants are entitled to judgment dismissing* the first cause of action, without costs.
Findings of fact and conclusions of law consistent herewith may be submitted and settled either on stipulation or on five days’ written notice.